UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

GARRY STEWART,

    Plaintiff,

vs.                                        Case No.  3:06-cv-947-J-MCR

MICHAEL J. ASTRUE, Commissioner of the
Social Security Administration,

    Defendant.
_____/

**MEMORANDUM OPINION AND ORDER**[1]

This cause is before the Court on Plaintiff's appeal of an administrative decision denying his application for Social Security benefits.  The Court has reviewed the record, the briefs and the applicable law.  For the reasons set forth herein, the Commissioner's decision is **REVERSED** and the case is remanded for further proceedings.

**I.    PROCEDURAL HISTORY**

Plaintiff filed an application for a period of disability and disability insurance benefits ("DIB") on April 25, 2003 (Tr. 170-72), alleging an inability to work since January 29, 2003.  (Tr. 196-97).  The Social Security Administration ("SSA") denied this application initially and on reconsideration.  (Tr. 53-59).  Plaintiff then requested and received a hearing before an Administrative Law Judge (the "ALJ") on December 13, 2005.  (Tr. 68-71).  On May 19, 2006, the ALJ issued a decision finding Plaintiff was not disabled.  (Tr. 16-27).  On June 5, 2006, Plaintiff filed a Request for Review by the

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge.  (Doc. 10).

1

Appeals Council. (Tr. 9-12). The Appeals Council denied Plaintiff's request for review, thus making the ALJ's May 19, 2006 decision the final decision of the Commissioner. (Tr. 6-8). Plaintiff timely filed his Complaint in the U.S. District Court on October 30, 2006. (Doc. 1).

## II.     NATURE OF DISABILITY CLAIM

### A.     Basis of Claimed Disability

Plaintiff claims to be disabled since January 29, 2003 due to various physical and mental impairments precipitated by end-stage renal disease and a kidney transplantation performed on December 2, 2000. (Doc. 13). Plaintiff specifically alleges fatigue, joint swelling, pain (associated with osteoporosis) and mental impairment as a result of coping with his physical ailments. (Doc. 13).

### B.     Summary of Evidence Before the ALJ[2]

Plaintiff was 41 years of age on the date the ALJ's decision was issued. (Tr. 17). He has a high school education with some college coursework - although he never obtained a college degree or certificate - and has past relevant work experience as a mail sorter, statement processor, print operator, computer operator and embosser. (Tr. 317). Plaintiff's medical history is detailed in the ALJ's decision, but a brief summary is appropriate considering the multitude of claims.

Plaintiff was previously granted a period of disability and disability insurance benefits from March 26, 1999 to July 1, 2002 due to end-stage renal disease. (Tr. 28-

---

[2] Because Plaintiff's appeal is primarily focused on his alleged mental impairment, the Court will focus its summary on the medical evidence related to this aspect of Plaintiff's initial complaint.

30).  In treating this disease, Plaintiff underwent dialysis and ultimately received a kidney transplant on December 2, 2000.  This procedure had a positive outcome and Plaintiff was able to satisfactorily complete a Trial Work Program (TWP) from May 2001 until January 2002.  (Tr. 30).  The Social Security Administration decided Plaintiff's completion of the TWP constituted substantial gainful activity, and his period of disability and disability insurance benefits ceased.  (Tr. 30).

Despite the seeming success of the transplant procedure itself, the Plaintiff claims there are some lingering medical issues related to his end-stage renal disease, including significant mental impairment.  (Doc. 13).  On September 16, 2003, Plaintiff presented himself to Dr. Lucas for a consultative personality assessment in which she noted that Plaintiff "appears psychologically competent to perform a routine repetitive task and to appreciate the need for appropriate relations among co-workers and supervisors."  (Tr. 326).  Further, Dr. Lucas reported that Plaintiff was adequately attentive during the interview with regard to his concentration, persistence and pace.  (Tr. 326).  However, her clinical impressions suggested "[m]ajor depression" and the prognosis for Plaintiff was "[g]uarded."  (Tr. 326).

On March 12, 2003, Dr. Gregory reported that Plaintiff had recently fractured his right foot, and that it was apparent he has severe osteoporosis.  (Tr. 532).  As a result, he suggested that Plaintiff increase his calcium intake and begin a drug regimen to treat his osteoporotic condition.  (Tr. 532).  Further, Dr. Gregory stated that in addition to his physical ailments, Plaintiff was having "problems with stress, tension, depression, etc."  (Tr. 532).  Dr. Gregory explained that his current dosage of Paxil (anti-depressant) was insufficient, and that he intended to increase it.  (Tr. 532).  Additionally, Dr. Gregory

3

suggested that psychological counseling may be of some benefit to Plaintiff.  (Tr. 532).

In a letter dated August 25, 2003, Dr. Manuel Portalatin, the Plaintiff's treating physician since 1995, noted that Plaintiff had a "significant medical problem stemming from his renal failure."  (Tr. 595).  Dr. Portalatin also emphasized that his condition was "unusual in view of his immunocompromised state," (Tr. 387) and opined that there could be numerous consequences resulting from Plaintiff's kidney problems, including bone fractures.  (Tr. 595).  According to Dr. Portalatin, the problem with Plaintiff's predisposition to bone fractures was compounded by the "poor healing potential" commonly associated with renal system complications, and Dr. Portalatin believed these medical issues affected Plaintiff's quality of life.  (Tr. 595).  In fact, Dr. Portalatin reported that Plaintiff was only capable of getting out of bed four days a week and had no more than two hours per day of "good times."  (Tr. 587).

Eduardo Sanchez, M.D. examined the Plaintiff during a consultative psychiatric evaluation on March 30, 2004.  (Tr. 554).  Dr. Sanchez noted that Plaintiff was prompt to the interview and well-kempt in appearance. However, he also noted that Plaintiff seemed agitated and expressed no interest in answering questions.  (Tr. 555).  Plaintiff became even more irritated when asked to engage in cognitive testing. According to Dr. Sanchez, Plaintiff had mixed results in his cognitive testing, exhibiting an ability to concentrate sufficiently to perform mathematical operations but failing other relatively basic cognitive exercises.  (Tr. 555).  Dr. Sanchez reflected these mixed results in stating: "In all honesty, I could not come up with a clear picture of depression . . . [I]f there is any depressive symptomatology left, I do not feel that this symptomatology is significant."  (Tr. 555).  Instead, Dr. Sanchez suggested Plaintiff was having difficulty

returning to an active lifestyle after successive and persistent illnesses and persistence of some physical symptomatology.  (Tr. 555).  As a result, Dr. Sanchez diagnosed Plaintiff with an adjustment disorder with disturbance of emotions, mild; history of arterial hypertension; history of nephrotic syndrome; history of successful kidney transplant; osteoporosis; and question of sleep apnea. (Tr. 555).

On May 25, 2005, Plaintiff was admitted to the Intensive Outpatient Program ("IOP") at Ten Broeck Hospital.  (Tr. 732).  At the time of admission, Plaintiff reported "decreased interest in or enjoyment of activities, indecisiveness and feelings of hopelessness, helplessness and worthlessness." (Tr. 756).  During Plaintiff's stay at Ten Broeck, he attended psychotherapy and psychoeducation groups to learn coping skills to help manage depression as well as group therapy sessions (including one family group therapy session with his wife). (Tr. 732).  The Discharge Summary from the IOP states that Plaintiff was "able to successfully process thoughts and feelings regarding his marriage," and that he agreed to attend marital counseling after discharge from the hospital. (Tr. 732).  The diagnosis at the time of discharge was: depressive disorder, NOS; hypertension; kidney transplant; marital and family issues; and financial concerns.  (Tr. 732).

On December 1, 2005, Dr. Turner reported she had seen Plaintiff for a psychological examination on three occasions beginning on March 23, 2005 and ending on April 28, 2005.  (Tr. 836).  Dr. Turner stated that after these three one-hour sessions, the patient's condition was unimproved and she subsequently referred him to Ten Broeck OIP.  (Tr. 836).  She noted that Plaintiff was oriented; clean and neat in appearance; had fluent speech; and exhibited a flat and withdrawn affect with a mild

5

memory impairment. (Tr. 836). She further stated: "If patient had no physical disability, emotional problems would probably abate and would not interfere with working." (Tr. 839). Finally, Dr. Turner concluded that the consequences of Plaintiff's mental problems would result in "none-mild" difficulties in maintaining social functioning and "none-mild" deficiencies of concentration, persistence or pace. (Tr. 838).

Dr. Juan Miller diagnosed Plaintiff with major depression in a Mental Impairment Questionnaire completed on November 21, 2005. (Tr. 830). Dr. Miller saw Plaintiff for an initial evaluation on June 14, 2004, and on three subsequent visits for medication management. (Tr. 830). He noted that on Plaintiff's last visit, December 7, 2004, Plaintiff remained depressed and opined that the prognosis was "poor," but was unable to produce a GAF because Plaintiff had not been seen in his office for almost an entire year. (Tr. 830). With regard to Plaintiff's functional limitations, Dr. Miller indicated there was "marked" restriction of activities of daily activities; "moderate" difficulties in maintaining social functioning; and "moderate" deficiencies of concentration, persistence, or pace. (Tr. 832). He also opined that the following characterization applied to Plaintiff:

> Medically documented history of a chronic organic mental, schizophrenic, etc. or affective disorder of at least 2 years duration that has caused more than a minimal limitation of ability to do any basic work activity, with symptoms or signs currently attenuated by medication or psychosocial support.

(Tr. 833). However, Dr. Miller also stated that the Plaintiff was not working secondary to his physical illness. (Tr. 833).

**C.   Summary of the ALJ's Decision**

A plaintiff is entitled to disability benefits when he is unable to engage in

6

substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than 12 months. 42 U.S.C. §§ 416(I), 423(d)(1)(A); 20 C.F.R. § 404.1505 (2007).[3] The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, he is not disabled. 29 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering his residual functional capacity, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled. 20 C.F.R. § 404.1520(f). Plaintiff bears the burden of persuasion through step four, while at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146, 107 S.Ct. 2287 n.5 (1987).

---

[3] Please note that all subsequent references to the Code of Federal Regulations will be to the 2007 edition.

In the instant case, the ALJ found Plaintiff had not engaged in any substantial gainful activity since the alleged onset of disability, January 29, 2003.[4] (Tr. 17-18). In support of this conclusion, the ALJ pointed to the earnings record of Plaintiff, which showed short-term and long-term disability payments as the sole source of income from January 2003 to April 2004, suggesting no substantial or gainful work activity during that period. (Tr. 17). At Step Two, the ALJ found Plaintiff suffered from severe impairments: "status post kidney transplant, osteoporosis, chronic sinusitis and depression resulting from moderate restrictions of activities of daily living, mild difficulties maintaining social functioning, mild difficulties maintaining concentration, persistence or pace and no episodes of decompensation." (Tr. 22). At Step Three, the ALJ determined Plaintiff did not have an impairment, or any combination thereof, which met or equaled any of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P. App. 1. (Tr. 22).

The ALJ further determined Plaintiff had the residual functional capacity ("RFC")[5] to perform sedentary work on a sustained basis. (Tr. 22). Specifically, the ALJ found Plaintiff was able to:

> [L]ift up to 10 pounds frequently and 10 pounds occasionally; sit about 6 hours in an 8-hour workday; and stand or walk about 2 hours in an 8-hour workday. He can climb, balance, stoop, kneel, crouch or crawl occasionally.

(Tr. 22). In reaching this conclusion, the ALJ rejected Plaintiff's allegation that he was

---

[4] Under 20 C.F.R. § 404.1572, substantial gainful activity is work activity that involves doing significant physical or mental activities. The work may be substantial even if it is less intensive or well-paying than previous work. Gainful work activity is also usually done for pay or profit, but may be considered gainful regardless of whether a profit is realized.

[5] The term "residual funcational capacity," as defined in 20 CFR § 404.1545 and Social Security Rulings 96-8p, means the most an individual can still do after considering the effects of physical and/or mental limitations which may affect their ability to perform work-related tasks.

incapable of any work due to his impairments because the argument was "unpersuasive." (Tr. 22). Contrary to Plaintiff's allegation, the ALJ decided "the severity of the symptoms and the degree of limitations alleged are simply not supported by objective medical evidence of record." (Tr. 23). This evidence included medical reports by Dr. Snowden and Dr. Tran, which suggested Plaintiff's physical limitations did not preclude him from sedentary activities. (Tr. 23).

With respect to Plaintiff's mental limitations, the ALJ cited four different medical professionals, all of whom suggested Plaintiff's mental limitations would not prohibit him from performing work activity. (Tr. 23). The ALJ considered the opinions of State Agency medical consultants in accordance with the Regulations. See 20 C.F.R. § 404.1527 (outlining the way in which the Social Security Administration weighs medical opinions). The ALJ appropriately considered each of Plaintiff's allegations of mental impairment both independently and cumulatively. (Tr. 23).

At the hearing, the ALJ utilized the testimony of a vocational expert (VE). The ALJ asked the VE to review Plaintiff's past relevant work. (Tr. 24). The VE testified that Plaintiff's past work as a mail sorter was light, unskilled work (medium as performed by the Plaintiff); as a statement processor was light, unskilled work (medium as performed by the Plaintiff); as a print operator was light, unskilled work; as a computer operator was light, unskilled work (sedentary as performed by Plaintiff); and as an embosser was medium, semi-skilled work. (Tr. 24). The ALJ then evaluated the VE's testimony and confirmed that it did not conflict with the Dictionary of Occupational Titles. Accordingly, the ALJ concluded Plaintiff's residual functional capacity was such that he would be unable to perform his previous work as a mail sorter, statement processor, print

operator or embosser; however, he would be capable of performing his past job as a computer operator. (Tr. 24).

The ALJ proceeded to point out that Plaintiff was considered to be a "younger individual" according to the Regulations with a high school education and an unskilled, semi-skilled and skilled work background. (Tr. 24). Futher, the ALJ stated that the Plaintiff's age, education, and vocationally relevant past work experience must be viewed in conjunction with the Medical-Vocational Guidelines. (Tr. 24). Pursuant to this analysis, the ALJ determined that "because the evidence supports a finding tha tthe claimant can perform a substantially full range of sedentary work, a finding of "not disabled" can be reached by application of Medical-Vocational Rules 201.27 and 201.28." (Tr. 25).

## III.   ANALYSIS

### A.   The Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390, 91 S.Ct. 1420 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835,

838 (11th Cir. 1982) and Richardson, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

**B.    Arguments**

Plaintiff asserts the ALJ erred by failing to appropriately evaluate the alleged mental impairments he suffered as a result of coping with a series of physical ailments, stemming from his end-stage renal disease and osteoporosis. (Doc. 13). Specifically, Plaintiff takes issue with the ALJ's conclusion that his symptoms result in only a "moderate" restriction of activities of daily living. (Tr. 25).

The Commissioner responds that the decision of the ALJ is indeed based on substantial evidence because the ALJ properly concluded Plaintiff is capable of sedentary work activity, including his former work as a computer operator and other jobs identified by the vocational expert. (Doc. 16).

**<u>Whether the ALJ appropriately evaluated Plaintiff's alleged mental impairments.</u>**

On November 21, 2005, Dr. Miller, Plaintiff's treating physician, indicated on a Medical Impairment Questionnaire that Plaintiff was experiencing "marked" restriction of activities of daily living. (Tr. 832). While there is some evidence in the record which suggests Plaintiff's restrictions are less than "marked," there are no medical opinions which directly controvert this characterization. As such, Plaintiff asserts the ALJ's finding of only "moderate" restriction is unfounded, and the departure from Dr. Miller's opinion constitutes a failure to appropriately weigh the opinion of a treating physician. (Doc. 13).

It is clearly established that a treating physician's opinion will be granted controlling weight if it is consistent with other medical evidence and is well-supported by acceptable clinical and diagnostic techniques. 20 C.F.R. § 404.1527(d)(2). Treating physicians are granted such deference because they are most able to provide a detailed, longitudinal picture of the patient's medical status. <u>Id.</u> However, where some medical evidence is found to be inconsistent with the treating physician's opinion, the ALJ should give that opinion "substantial or considerable" weight unless "good cause" is shown to the contrary. <u>Lewis v. Callahan</u>, 125 F.3d 1436, 1140 (11th Cir. 1997); <u>accord</u> 20 C.F.R. § 404.1527(d)(2). The Eleventh Circuit has found "good cause" to exist where: (1) the opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the opinion was conclusory or inconsistent with the doctor's own medical records. <u>Wright v. Barnhart</u>, 153 F. App'x 678, 684 (11th Cir. 2005). Further, if the ALJ decides to grant less than substantial or considerable weight to a treating

physician, she must clearly articulate the reasons for doing so. MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986). Failure to comply with this regulation is reversible error. Id.

In the instant case, Plaintiff had several treating physicians, two of whom completed a Medical Impairment Questionnaire ("MIC") - Dr. Miller and Dr. Turner. (Tr. 832, 838). Dr. Miller's MIC was completed on November 21, 2005 and indicated "marked" restriction of activities of daily living; "moderate" difficulties in maintaining social functioning; "moderate" deficiencies of concentration, persistence or pace; and made no indication pertaining to episodes of decompensation. (Tr. 832). Dr. Turner conducted her MIC on December 1, 2005 and opined Plaintiff suffered from "none-mild" difficulties in maintaining social functioning; "none-mild" deficiencies of concentration, persistence or pace; and made no indication with respect to either Plaintiff's restriction of activities of daily living or episodes of decompensation. (Tr. 838).

Presumably in an effort to find a "middle road," the ALJ found Plaintiff's impairments resulted in "moderate" restrictions of activities of daily living, "mild" difficulties maintaining social functioning; "mild" difficulties maintaining concentration, persistence or pace and no episodes of decompensation. (Tr. 22). However, in reconciling these differing opinions, the ALJ did not specify what weight was afforded to either of the physicians, or what methodologies were employed in reaching her final conclusion. Specifically, the ALJ failed to state what evidence, if any, compelled her to reject Dr. Miller's indication that Plaintiff suffered from "marked" restrictions of activities of daily living. (Tr. 22). Considering Dr. Turner was silent with respect to this element of the MIC, the ALJ should at least give considerable or substantial weight to Dr. Miller's

13

opinion unless "good cause" is shown to the contrary. Lewis v. Callahan, 125 F.3d 1436, 1140 (11th Cir. 1997); accord 20 C.F.R. § 404.1527(d)(2). Furthermore, the ALJ must give "explicit and adequate" reasons for doing so, especially when rejecting the uncontroverted opinion of a treating physician. Elam v. R.R. Ret. Bd., 921 F.2d 1210, 1215 (11th Cir. 1991). The ALJ makes no effort to discredit Dr. Miller, cites no specific evidence which runs contrary to Dr. Miller's opinion, and makes no attempt to show "good cause" for rejecting his medical opinion. Thus, the ALJ erred by finding Plaintiff suffered from "moderate" restrictions of daily living.

However, our review does not end here, because the case need not be remanded if the error is harmless. Mills v. Astrue, 226 F. App'x 926, 931 (11th Cir. 2007) (citing Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983) (finding that ALJ's mischaracterization of past work was harmless error, because it was irrelevant when there was no finding of severe impairment)). While there is evidence in the record, such as the medical opinion of Dr. Lucas and Plaintiff's own testimony, which could be used to support the ALJ's final decision, without some guidance as to how the ALJ weighed the evidence in this case, there is no basis upon which this Court can meaningfully conclude whether the correct legal standards were applied. Any attempt to glean from the ALJ's decision whether the error was harmless, or the extent to which the ALJ relied on specific evidence, would be mere conjecture, and would necessarily involve re-weighing the evidence. This clearly "invades the province of the ALJ" and extends beyond the purview of this Court. See Moore v. Barnhart, 405 F.3d 1208, 1214 (11th Cir. 2005).

In essence, the Commissioner contends that had the ALJ evaluated Dr. Miller's opinion in compliance with the Regulations, the outcome would have been the same and any omission would have been harmless error.  See Diorio, 721 F.2d 726, 728 (11th Cir. 1983).  However, Dr. Miller's testimony does not simply corroborate the ultimate findings of the ALJ, which could make that opinion unnecessary.  Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 547 (6th Cir. 2001).  Instead, it suggests Plaintiff's limitations exceeded those described in the ALJ's findings, and that aspect of the decision is reasonably disputed by the parties.  The Eleventh Circuit has declared that: "to provide the parties with any sort of meaningful judicial review, we must be able to ascertain whether the ALJ correctly followed the law."  Wiggins v. Schweiker, 679 F.2d 1387, 1390 (11th Cir. 1982).  As stated above, the undersigned is unable to divine from the ALJ's decision whether she accorded Dr. Miller's opinion considerable or substantial weight, or found good cause not to do so.  Id.

Although this Court is reticent to remand this case, and finds the ALJ's decision to most likely be supported by substantial evidence, "[a] court cannot excuse the denial of a mandatory procedural protection simply because, as the Commissioner urges, there is sufficient evidence in the record for the ALJ to discount the treating source's opinion and, thus, a different outcome on remand is unlikely." Nyberg v. Comm'r of Soc. Sec., 179 F. App'x 589, 592 (11th Cir. 2006) (citing Wilson, 378 F.3d at 546).  To hold otherwise, and to "recognize substantial evidence as a defense to non-compliance with § 1527(d)(2), would afford the Commissioner the ability the [sic] violate the regulation with impunity and render the protections promised therein illusory."  Wilson, 378 F.3d at 546.

Therefore, this Court must remand the case for reconsideration by the ALJ, who should evaluate all the evidence according to the respective weight required by law and should render a decision that will provide reviewing courts with the basis for determining that she applied the correct legal standards.

## IV.  CONCLUSION

For the reasons stated herein, the Clerk of the Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) **REVERSING** the Commissioner's decision and **REMANDING** the matter to the ALJ with instructions to: (1) specifically articulate the weight afforded all of Plaintiff's treating physicians and any reasons for discrediting those opinions; (2) re-evaluate Plaintiff's residual functional capacity in accordance with the guidelines set forth in 20 C.F.R. § 404.1527(d); (3) consult a vocational expert if necessary; and (4) conduct any other proceedings deemed appropriate.  Thereafter, the Clerk is directed to close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this  19th  day of October, 2007.

*Monte C. Richardson*
MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record